IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID FARRAKHAN ALI MUHAMMAD
  (aka DAVID    STIGGER) #216-350        *
        Plaintiff
                                                      *
              v.                                   CIVIL ACTION NO. ELH-13-1072
                                                   *
WARDEN BOBBY SHEARIN
        Defendant                             *

**MEMORANDUM OPINION**

David Farrakhan Ali Muhammad, the self-represented plaintiff, is a Maryland prisoner incarcerated at North Branch Correctional Institution in Cumberland, Maryland ("NBCI"). Plaintiff, formerly known as David Stigger,[1] has filed suit against Warden Bobby Shearin, defendant, to recover money damages and to obtain injunctive and declaratory relief in regard to defendant's alleged refusal to recognize plaintiff's change of his name for religious reasons. According to plaintiff, defendant's conduct constitutes a violation of 42 U.S.C. § 2000cc-1 (the Religious Land Use and Institutionalized Persons Act), the Free Exercise Clause of the First Amendment to the Constitution, and the Due Process Clause of the Fourteenth Amendment.

Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment ("Motion," ECF 14), supported by exhibits. Plaintiff has filed an opposition (ECF 16), and defendant has replied. ECF 19. A hearing in this matter is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, defendant's Motion, construed as a motion

---

[1] At the time plaintiff entered the Maryland Division of Correction, he was known as David Stigger. The court initially referenced plaintiff's previous name in the caption of this case out of an abundance of caution, so that prison mail room staff would provide plaintiff with copies of documents sent from the court. The parties agree, however, that plaintiff's legal name is David Farrakhan Ali Muhammad. Therefore, the Clerk will be directed to amend the docket accordingly.

for summary judgment, shall be granted in part and denied in part, without prejudice, pending additional briefing by the parties.

### Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2] In any event, in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was informed of his right to file a response to the Motion, and the

---

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 15. As noted, he filed a response in opposition.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties‟ procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Plaintiff has not filed an affidavit under Rule 56(d). But, he

3

has filed an opposition. I am satisfied that it is appropriate to address defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Fourth Circuit has explained: "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). However, the court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences

in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.,* 477 U.S. at 323-24).

**Factual and Procedural Background**

Plaintiff was committed to the Maryland Division of Correction ("DOC") on or about July 3, 1991, under the name David Stigger. *See* ECF 14, Ex. 1, Records Declaration of Randy Durst, Correctional Case Manager Specialist II; Exhibit 1-6, Amended Commitment Record. Plaintiff explains that he later sought to change his name legally to reflect his belief as a practicing Muslim. To that end, more than a decade after his commitment, plaintiff petitioned the Circuit Court for Anne Arundel County to change his name to David Farrakhan Ali Muhammad, in accordance with his Muslim faith. ECF 16, Ex. 1-3, Case No. C-2001-7385, Order for Name Change. The court (North, J.) granted the petition on February 27, 2003. *Id*. A true test copy was signed by the Clerk of the Court the next day. ECF 14, Ex. 4. Therefore, according to plaintiff, all of his institutional records and his DOC Identification Number should reflect his religious name, David Farrakhan Ali Muhammad, "as mandated by the Amended Commitment Record." ECF 1, p. 6 and Ex. 1.

Defendant indicates that on September 18, 2008, when plaintiff was transferred from Jessup Correctional Institution ("JCI") to NBCI, he was given an ID with the name David

Stigger listed on the front and David Muhammad listed on the back. ECF 16, Ex. 1-4, OBSCIS Reporting Functions - Offender Traffic History; Ex. 3 at ¶ 4, Declaration of Leslie Simpson, Correctional Case Management Specialist II. Plaintiff inquired about his ID to ascertain why it did not reflect his name change.

Plaintiff asserts that in June 2012, he filed a motion in the Circuit Court for Montgomery County to amend his commitment record to reflect his name change. That motion was granted on or about June 29, 2012 (Mason, J.), and a true test copy of the amended commitment record was signed by the Clerk of the Court on July 9, 2012. ECF 14, Ex. 7. The court order to amend plaintiff's commitment record to reflect his name change, *id.,* Ex. 1-6, was served upon NBCI personnel on July 24, 2012. *Id*. But, plaintiff alleges that defendant failed to comply with DOC policy by recognizing the name change, prompting plaintiff to file an Administrative Remedy Procedure ("ARP"). However, the ARP was dismissed on July 26, 2012.[3] *Id.,* Ex. 1, pp. 3, 4-5.

On August 2, 2012, an ID Alert was issued in the Offender Based State Correctional Information System ("OBSCIS"), notifying staff that plaintiff had been granted a court-ordered name change with respect to his commitment records. ECF 16, Ex. 1-7, OBSCIS ID Alert. The database was updated and the new name added to plaintiff's record as an alias. *Id*. On September 25, 2012, plaintiff was referred for a new ID card, to reflect the amendment to the commitment records. *Id.* Ex. 1-5, Photocopy of David Muhammad DOC Identification Cards. Plaintiff was first issued a new ID showing his religious name on the front and his original committed name, as an alias, on the back. *Id*. at 3-4. The spelling of plaintiff's religious name,

---

[3] Correctional Case Management Specialist Leslie Simpson avers that as of June 19, 2013, plaintiff had filed two ARP complaints relating to the issues raised herein, but had not appealed the denial of same. ECF 14, Ex. 10. But, defendant has not raised plaintiff's failure to fully exhaust administrative remedies as an affirmative defense. Therefore, that issue is not before the court.

however, was incorrect. ECF 16, p. 6. On October 7, 2013, another ID was issued, bearing the correct spelling of plaintiff's name, David Farrakhan Ali Muhammad.[4] ECF 19, Ex. 1, Declaration of Correctional Officer Roman Raley, NBCI Inmate ID officer, at ¶5.

Defendant has provided information concerning the DOC process for recognizing prisoners' name changes. Pursuant to § 25(A)(1) of the DOC Manual, a prisoner entering the DOC is identified in the Offender Based State Correctional Information System using the name listed on the court commitment records and is issued an identification card ("ID") consistent with those records. ECF 16, Ex. 1-2, Division of Corrections Manual: DOC.100.0002, Section 25. OBSCIS is a statewide database used by Maryland correctional institutions to assist in identifying inmates and keeping track of pertinent information. *Id.,* Ex. 2, Declaration, J. Michael Stouffer, Deputy Secretary of Operations at ¶ 3-4. Other names by which a prisoner wishes to be known are listed as aliases. *Id.*

Defendant notes that the DOC Manual provides that, when a prisoner legally changes his name, the new name is then listed on the records and ID as an alias. *Id.,* Exhibit 1-2 at (A)(7). This differs from the process required for a prisoner seeking to change the name under which he is committed. In that circumstance, the sentencing judge must issue an amended commitment showing the new name, and after the commitment records have been changed, the new name is added to the database as an alias, and the ID converted to list the new name on the front with the original name of commitment on the back. *Id.,* Ex. 1-2 at (A)(8).

Correctional Chaplain Kevin Lamp avers that plaintiff, a general population prisoner, is permitted to participate in communal religious services and is the prisoner facilitator for the

---

[4] It appears that plaintiff's claim for injunctive relief has been partially rendered moot with regard to the issuance of the new ID correctly listing his name. Plaintiff has not asserted that his prison account was charged for the correction.

Nation of Islam ("NOI"). As such, plaintiff may attend an hour-long service held weekly in the gym as well as a monthly study group, and may keep religious items in his cell, including a prayer rug, Koran, hijab, and kufi. ECF 14, Ex. 11, Declaration of Kevin Lamp, at ¶ 4.

Plaintiff indicates that, despite some recognition of his new name, prison personnel still list his name as David Stigger at the commissary, on the tier roster in his housing unit, on all records and correspondence prepared by case management personnel, and on all records relating to dietary, dental, and medical matters. Moreover, he complains that the prison chaplain refers to him as "David Stigger," and that the traffic records that list his movement to attend programs and activities also use his previous name. ECF 18 at 6.

## Discussion

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Although RLUIPA affords broad protection to religious exercise, it must be applied in the prison setting with particular sensitivity to security concerns, and does not "elevate accommodation of religious observances over an institution's needs to maintain order and safety." *See Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Nevertheless, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs, without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered, however. Prison policies that restrict or impact on the free exercise of religion, but are related to legitimate penological objectives, do not run afoul of the Constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987).

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question.

In addition, plaintiff's complaint requires this court to examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified in 42 U.S.C. § 2000cc *et seq.* It provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person— (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA establishes a statutory protection for the free exercise of religion that exceeds the requirements of the Free Exercise Clause of the First Amendment. *See Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir. 2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution"). "'RLUIPA adopts a . . . strict scrutiny' standard." *Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006)). Under RLUIPA, the "plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. If the plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest." *Couch*, 679 F.3d at 200 (internal citations omitted).

Plaintiff claims that the policies of the DOC with regard to full recognition of his religious name change place a substantial burden on his religious beliefs and practice. Defendant acknowledges that DOC officials are obligated to recognize a court order and respond in accordance therewith, but notes that the order must first be granted and the official must receive

it before it can be acted upon. *See Rodriguez v. Northampton County*, No. 00-1898, 2003 U.S. Dist. LEXIS 19567, at 14. (E.D. Pa Oct. 21, 2003) (Where defendants did not comply with a court order because they had not received it, prisoner's due process rights had not been violated). Defendant also contends that plaintiff has no right to have various DOC records amended to reflect his new name. To support this position, defendant argues that DOC procedures properly recognize the State's compelling interest in maintaining security and order. *See generally Sullivan v. Ford,* 609 F.2d 197, 198 (5th Cir. 1980).

In *Ephraim v. Angelone*, 313 F. Supp. 2d 569 (E.D. Va. 2003), a prisoner was granted a religious name change and correctional personnel added the new name to official records as an "AKA" or "alias" and continued using the prisoner's commitment name on financial records. *Id*. at 575. The court found that this practice did not support a finding that the prisoner had been denied any rights or privileges. *Id*. at 576. Indeed, the Fourth Circuit has found that adding a religious name change to an institution's records is a constitutionally adequate accommodation. *See Barrett*, 689 F.2d 498 at 504 (adding the religious name change to the institution's records is sufficient to avoid a constitutional violation, but revision or reordering of existing files is not required). Furthermore, a policy that under some circumstances requires the use of both committed and religious names "does not constitute an impermissible burden on [an inmate's] free exercise rights." *Thacker v. Dixon*, No. 91-6610, 1992 U.S. App. LEXIS 1221, at *3 (4th Cir. Feb. 3, 1992).

In *Thacker*, where prison officials recognized the inmate's religious name and offered other accommodations, such as the ability to attend religious services, worship on holidays, and wear religious garments, the court found no constitutional violations. *See Thacker*, 1992 U.S. App. LEXIS 1221 at *3-4. Here, plaintiff is the prison's facilitator for the NOI. He is permitted

10

to attend religious services, hold a monthly prayer group, and be in possession of various religious items. Exhibit 4, Declaration Kevin Lamp, Correctional Chaplain, NBCI.

The DOC maintains a policy that requires use of the commitment name as the name of record in OBSCIS, and allows for the new name to be added to the system. ECF 14, Ex. 1-2(A)(7)-(8). Plaintiff has been issued an ID that reflects his legal name change. *Id*. Plaintiff does not claim that he is denied any governmental benefits, nor that he is forced to violate his beliefs, and he has not shown that defendant's reliance on DOC policy as enforced at NBCI has placed a substantial burden on plaintiff's religious exercise. Plaintiff has not been pressured to modify his behavior and to violate his religious beliefs, nor is he forced to choose between practicing his beliefs and receiving a governmental benefit. See *Lovelace,* 472 F.3d at 187.

OBSCIS is used by correctional facilities all across the State of Maryland to keep track of prisoners as they are transferred from one institution to another. Like the institution in *Ephraim*, OBSCIS is used to manage the inmate's records, and both the commitment name and the religious name are used with financial transactions. *Id*. at 576. Given the nature of the prison system, it is imperative that officials are able to identify inmates and maintain consistency; OBSCIS allows them to do this. Exhibit 2. Having a system that also allows for accurate identification of inmate financial transactions furthers the institution's security concerns. A complete overhaul of the computer system and administrative record keeping system would inevitably result in additional expenses for an institution already facing limited resources, *Ephraim*, 313 F. Supp.2d at 577, and would be "unduly burdensome" for the institution. *Id*.

Because plaintiff has failed to meet his burden, defendant need not prove that the policy at issue is the least restrictive means of furthering a compelling government interest. *See Couch*,

679 F.3d at 200.[5] Defendant is entitled to summary judgment with regard to plaintiff's RLUIPA claim. As RLUIPA's protection exceeds the requirements of the Free Exercise Clause, plaintiff likewise has failed to establish his First Amendment claim.

In addition, plaintiff asserts that defendant violated the Fourteenth Amendment's Due Process Clause by failing to fully comply with the amended commitment order of July 5, 2012. ECF 1, p. 6. Due process is implicated where government action deprives an individual of a legitimate, protected liberty or property interest. See *Bd of Regents of State Colls. V. Roth*, 408 U.S. 564 (1972); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Here, plaintiff asserts a liberty interest. Such interests are established by the Constitution or state laws or policies. See *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause, however, "does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). When assessing a liberty interest asserted by a convicted individual, the court must recognize that such interest "is substantially restricted and [the individual's] confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Plaintiff's initial ARP complaint of July 24, 2012, relating to the amendment of his commitment records and recognition of his name change, indicated the changes were granted by court order on July 5, 2012. Defendant was served with the official court order that same day (July 24, 2012), and by August 2, 2012, steps were taken to add his religious name to OBSCIS in accordance with the DOC Manual. Plaintiff was given an ID to reflect his name change on

---

[5] Had plaintiff met his burden, the court would examine whether defendant's reliance on OBSCIS impinged plaintiff's exercise of religion.

September 25, 2012. The time it took to complete this process in conformity with DOC policies and procedures was reasonable. *See Ephraim*, 313 F. Supp.2d at 577 (it is reasonable for the name change process to take several months).

Ordinarily, these accommodations, combined with the efforts made to recognize plaintiff's name change, would be sufficient to withstand claims of a constitutional violation. See *Thacker*, 1992 U.S. App. LEXIS 1221 at *3-4. But, defendant has failed to address why plaintiff cannot use his legally recognized name change at the commissary, and why his name change cannot be reflected on his current housing unit roster and case management correspondence as well as on case management, dietary and medical records.[6] To be sure, the organization of prison records is "quintessentially an administrative matter in which the courts should not intervene." *Barrett*, 689 F.2d 498 at 504. However, defendant has not provided any explanation concerning these allegations. Defendant shall be provided an opportunity to rebut plaintiff's assertion that these practices are occurring, in violation of his right to due process.

For these reasons, defendant's motion for summary judgment shall be granted with regard to plaintiff's claims under RLUIPA and the First Amendment, and denied, without prejudice, with respect to plaintiff's due process claim. Defendant shall be granted twenty-one days to supplement his dispositive motion as noted herein, and plaintiff shall be granted twenty-one days to file any response thereto.

A separate Order shall be entered in accordance with this Memorandum Opinion.

Dated: October 17, 2013        /s/
                               Ellen Lipton Hollander
                               United States District Judge

---

[6] Plaintiff does not request, and the court does not find, that defendant is required to update or amend records that reflect his previous name prepared prior to the court order granting the use of plaintiff's religious name.