IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID FARRAKHAN ALI MUHAMMAD
    #216-350     *
    Plaintiff
                                  *
    v.         CIVIL ACTION NO. ELH-13-1072
                                  *
WARDEN BOBBY SHEARIN     *
    Defendant

**MEMORANDUM**

Plaintiff David Farrakhan Ali Muhammad, formerly known as David Stigger, is a Maryland prisoner incarcerated at North Branch Correctional Institution in Cumberland, Maryland ("NBCI").[1] He filed suit against Warden Bobby Shearin under 42 U.S.C. § 1983, seeking to recover damages and to obtain injunctive and declaratory relief in regard to defendant's alleged refusal to recognize plaintiff's change of his name for religious reasons.

According to plaintiff, defendant's conduct constituted a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000CC-1; the Free Exercise Clause of the First Amendment to the Constitution; and the Due Process Clause of the Fourteenth Amendment. Defendant moved to dismiss or, alternatively, for summary judgment. ECF 14. The court granted summary judgment in favor of defendant with regard to plaintiff's RLUIPA and First Amendment claims, and required supplemental briefing with regard to plaintiff's due process claim. Memorandum Opinion and Order of October 17, 2013, ECF 20 and 21.

---

[1] Plaintiff was sentenced in 1991 to two terms of life imprisonment, without parole, for convictions of first-degree murder. He was also convicted and sentenced for use of a handgun in the commission of crimes of violence. *See* ECF 14-7.

Plaintiff filed a Motion To Alter Or Amend the Judgment, ECF 23, seeking reconsideration of the Court's Memorandum and Order of October 17, 2013 (ECF 20, 21). He contends that his surreply, received on October 22, 2013, was not considered in regard to ECF 20 and ECF 21. The surreply focused on several prisoner identification documents that plaintiff states carry his forged signature. Plaintiff claims the identification documents were "manufactured" by defendant and thus show intent to violate plaintiff's right under the First Amendment and RLUIPA. *Id.*[2]

Defendant filed the court-ordered supplemental memorandum in support of his renewed motion to dismiss or, alternatively, for summary judgment, supported by exhibits. ("Motion," ECF 27). The motion is opposed by plaintiff, ECF 30, who has also submitted several exhibits. *See* ECF 30-1 (14 pages). No hearing is needed to resolve the pending matters. *See* Local Rule 105.6.

## Factual Background[3]

On or about July 3, 1991, plaintiff was committed to the Maryland Division of Correction ("DOC"), under the name David Stigger. *See* ECF 14-2, Ex. 1, Declaration of Randy Durst, Correctional Case Manager Specialist II.[4] The DOC is part of Maryland's Department of Public Safety and Correctional Services ("DPSCS"). More than a decade after plaintiff's commitment to DOC, he sought to change his name to reflect his belief as a

---

[2] Local Rule 105.2.a provides that, unless ordered by the court, surreply memoranda are not permitted to be filed. Because plaintiff likely did not have access to that rule, I have examined and considered the surreply. But, it does not persuade me to set aside my previous decision.

[3] The background of this case, discussed in the previous Memorandum Opinion (ECF 20), is incorporated herein and reiterated in part as relevant to the remaining due process claim.

[4] The Durst Declaration is an exhibit, ECF 14-2, to which exhibits are also attached. *See* ECF 14-3 to 14-8. The Amended Commitment Record is found at ECF 14-7.

practicing Muslim. To that end, he petitioned the Circuit Court for Anne Arundel County to change his name to David Farrakhan Ali Muhammad. ECF 14-4, Case No. C-2001-7385, Order for Name Change. A Maryland State judge (North, J.) granted the petition on February 27, 2003. *Id*. A true test copy was signed by the Clerk of the Court the next day. *Id*. Based on this order, plaintiff argues that due process requires all of his institutional records and his DOC Identification Number ("ID") to reflect his religious name, David Farrakhan Ali Muhammad, "as mandated by the Amended Commitment Record." ECF 1 at 6; Ex. 1.

Defendant indicates that on September 18, 2008, when plaintiff was transferred from Jessup Correctional Institution ("JCI") to NBCI, he was given an ID card with the name David Stigger listed on the front and David Muhammad listed on the back. ECF 14-5, Ex. 1-4, OBSCIS[5] Reporting Functions - Offender Traffic History; ECF 14-10, Ex. 3 at ¶ 4, Declaration of Leslie Simpson, Correctional Case Management Specialist II at NBCI.

In June 2012, plaintiff filed a motion in the Circuit Court for Montgomery County to amend his commitment record to reflect his name change. That motion was granted on or about June 29, 2012 (Mason, J.), and a true test copy of the amended commitment record was signed by the Clerk of the Court on July 9, 2012. ECF 14-7, Ex. 1-6; ECF 30-1 at 4. The court order to amend plaintiff's commitment record to reflect his name change was served upon NBCI personnel on July 24, 2012.[6]

---

[5] OBSCIS, the Offender Based State Correctional Information System, is a database used by Maryland correctional institutions to assist in identifying prisoners and keep track of pertinent information. *See* ECF 16, Ex. 2, Declaration, J. Michael Stouffer, Deputy Secretary of Operations at ¶¶ 3-4.

[6] While the motion to amend plaintiff's commitment record to reflect his name change was pending, plaintiff filed an Administrative Remedy Procedure ("ARP") alleging that defendant failed to comply with DOC policy by recognizing the name change. The ARP was dismissed on July 26, 2012. ECF 14-2, Ex. 1 at 3, 4-5.

On August 2, 2012, an ID Alert was issued in OBSCIS, notifying staff that plaintiff had been granted a court-ordered name change with respect to his commitment records. ECF 14-8, Ex. 1-7, OBSCIS ID Alert. The database was updated and the new name was added to plaintiff's record as an alias. *Id.* On September 25, 2012, plaintiff was referred for a new ID card to reflect the amendment to the commitment records. ECF 14-16, Ex. 1-5, Photocopy of David Muhammad DOC Identification Cards. Plaintiff was first issued a new ID showing his religious name on the front and his original committed name, as an alias, on the back. ECF 14-6, Ex. 1-5 at 3-4. The spelling of plaintiff's religious name, however, was incorrect. *See* ECF 16 at 6. On October 7, 2013, another ID was issued, bearing the correct spelling of plaintiff's name, David Farrakhan Ali Muhammad. ECF 19-1, Ex. 1 at ¶ 5, Declaration of Correctional Officer Roman Raley, NBCI Inmate ID officer.

Defendant has provided information concerning the DOC process for recognizing prisoners' name changes. Pursuant to § 25(A)(1) of the DOC Manual, a prisoner entering the DOC is identified in OBSCIS using the name listed on the court commitment records and is issued an identification card ("ID") consistent with those records. ECF 14-3, Ex. 1-2, Division of Corrections Manual: DOC.100.0002, Section 25. Other names by which a prisoner wishes to be known are listed as aliases. *Id.*

Defendant notes that the DOC Manual provides that, when a prisoner legally changes his name, the new name is then listed on the records and ID as an alias.[7] ECF 14-3, Exhibit 1-2 at (A)(7). The parties do not dispute that this has been accomplished.

---

[7] This differs from the process required for a prisoner seeking to change the name under which he is committed. In that circumstance, the sentencing judge must issue an amended commitment showing the new name, and after the commitment records have been changed, the new name is added to the database as an alias, and the ID converted to list the new name on the front with the original name of commitment on the back. ECF 14-3, Ex. 1-2 at (A)(8).

Plaintiff complains that despite some recognition of his new name, prison personnel still list his name as David Stigger at the commissary, on the tier roster in his housing unit, on all records and correspondence prepared by case management personnel, and on all records relating to dietary and medical matters. Moreover, he complains that the prison chaplain refers to him as "David Stigger," and the traffic records that list his movement to attend programs and activities also use his previous name. ECF 16 at 6.

**Standard of Review**

For reasons articulated in the Memorandum Opinion of October 17, 2013 (ECF 20), incorporated herein, it remains appropriate to address defendant's original motion, ECF 14, as supplemented and renewed by ECF 27, as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under

the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation*, 477 U.S. at 323–24).

**Discussion**

Plaintiff asserts that defendant violated the Fourteenth Amendment's Due Process Clause by failing to comply fully with the amended commitment order of July 5, 2012. *See* ECF 30-1 at 4. Defendant acknowledges that DOC officials are obligated to recognize a court order and respond in accordance therewith, but also contends that plaintiff has no due process right to have various DOC records amended to reflect his new name.

Due process is implicated where government action deprives an individual of a legitimate, protected liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*,

408 U.S. 564 (1972); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Such interests are established by the Constitution or state laws or policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause, however, "does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). When assessing a liberty interest asserted by a convicted individual, the court must recognize that such interest "is substantially restricted and [the individual's] confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Defendant has explained why plaintiff cannot use his legally recognized name change at the commissary, and why his name change cannot be reflected on his current housing unit roster as well as on case management, dietary, and medical records. Commissary records, housing unit rosters and case management and dietary records are generated by OBSCIS. ECF 27, Supplemental Exhibit 1 at ¶ 2, Declaration of Brian D. France. OBSCIS, OCMS,[8] Central Repository and FBI databases create the "Master Name" of the person being arrested. OBSCIS is not set up to permit a name change to be reflected other than as initially entered. *Id.* at ¶ 3. At present, the DPSCS lacks the ability to create in OBSCIS a name change for use throughout its internal and external records. *Id*. Furthermore, a name change made in OBSCIS does not communicate the same information into OCMS, which will soon be implemented as the system of record for DPSCS. *Id*.

---

[8] Although not apparent from the record, "OCMS" likely references the Oracle Communications and Mobility Server, which would be used to create a computer-generated management system database. *See* http://docs.oracle.com/cd/E12529_01/doc.1013/e10292/security.htm.

To achieve the name change in OCMS, plaintiff would need to be processed again by a booking facility in order for his present name to become the "Master Name." *Id*. It would also require a change to the Central Repository and FBI Databases. Defendant contends that if OBSCIS could be modified to allow a name change in the creation of DPSCS records, such change would also require other modification of databases outside the control of DPSCS. *Id*. Defendant argues that this action would be cost prohibitive and labor intensive and would create gaps in criminal history information and associated processes. *Id.,* ¶¶ 4-5.

Defendant indicates that, despite DPSCS's inability to amend all records to reflect his name change, plaintiff is permitted to use his legal name to conduct personal business at NBCI. ECF No. 2-2, Supplemental Exhibit 2, Declaration of Warden Bobby Shearin, at ¶ 6. He may use his religious name to send and receive funds, use the mail, and purchase commissary items. *Id*. The NBCI commissary department relies upon the inmate's DOC number and digital ID photograph to match the person placing and/or receiving a commissary order. *Id*., ¶ 5. Commissary personnel do not rely upon the prisoner's name when orders are being placed.[9] *Id*. Plaintiff's receipt of a Lacto-Ovo Vegetarian Diet has not been affected by his name change. *Id.,* Supplemental Exhibit 2, ¶ 8. Although the roster reflects plaintiff's previous name, his ability to

---

[9] Plaintiff used his former name, David Stigger, when he submitted Commissary Order Forms on September 15, 2013 and October 6, 2013. ECF 27, Supplemental Exhibit 2 at ¶ 6. These orders were successfully filled by the NBCI Commissary Department and delivered to plaintiff's cell location by the supply officer. *Id*. Plaintiff complains that he was forced to use his former name because his ID card had not yet been corrected to reflect his religious name. The ID card was reissued on October 7, 2013. The two-month delay between the time plaintiff's name change was entered into OBSCIS and the time the new ID card was issued did not cause a suspension of plaintiff's commissary privileges.

participate in communal religious services and act as the prisoner facilitator for the Nation of Islam is unaffected.[10]  ECF 14-11, Ex. 11, Declaration of Kevin Lamp, NBCI Chaplain.

Insofar as plaintiff complains that medical records do not reflect his legal name, such records are completed and maintained by Wexford, an independent contractor which provides medical services to inmates committed to DPSCS's custody.  *Id.,* Supplemental Exhibit 2, ¶ 7.  DPSCS does not maintain those medical records and has no responsibility for updating the information in the medical records.  *Id.*

The Eighth Amendment "'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive protection 'than does the Cruel and Unusual Punishments Clause.'"  *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986).  In this Circuit, substantive due process is not to be used expansively.  Instead, "courts must be reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended, ... which means that the courts must exercise the utmost care whenever we are asked to break new ground in this field, ... lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges]."  *Hawkins v. Freeman*, 195 F.3d 732, 737 (4th Cir. 1999) (citations and internal quotations omitted).

As the Fourth Circuit has noted, the organization of prison records is "quintessentially an administrative matter in which the courts should not intervene."  *Barrett v. Virginia,* 689 F.2d. 498, 504 (4th Cir. 1982); ECF 20 at 13.  Indeed, the Fourth Circuit has found that adding a religious name change to an institution's records is a constitutionally adequate

---

[10] There is no claim that plaintiff is unable to move about the prison or interact with case management personnel based on paperwork listing his previous name.

accommodation. *See Barrett*, 689 F.2d 498 at 504 (adding the religious name change to the institution's records is sufficient to avoid a constitutional violation, but revision or reordering of existing files is not required). As stated by the Sixth Circuit: "We do not believe that any inmate has a constitutional right to dictate how prison officials keep their prison records." *Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980) (where sole issue was whether the prison files had to be changed to show the prisoner's religious name, the court found to cause of action).

In *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 575 (E. D. Va. 2003), the prisoner obtained a religious name change and the correctional facility added the new name to its official records as an "AKA." Prison administrators continued using the prisoner's committed name on financial records. The court found that this practice did not support a finding that the prisoner had been denied any rights or privileges. *Id*. at 576. Plaintiff likewise has not been denied any rights or benefits by DPSCS's use of his non-religious name on administrative records. OBSCIS does not have the present ability to generate administrative records with plaintiff's name. And, if there were a ready way to change OBSCIS's function to create such records, such change would result in an inability to communicate with other law enforcement computer systems.

The DOC maintains a policy that requires use of the commitment name as the name of record in OBSCIS, and allows for the new name to be added to the system. ECF 14, Ex. 1-2(A)(7)-(8). Plaintiff has been issued an ID number and card that reflect his legal name change. *Id*. Like the institution in *Ephraim*, OBSCIS is used to manage the inmate's records and, given the limitations of the OBSCIS system, use of the prisoner's religious name may not be adapted as the identifier for each aspect of administrative tracking. *Id*. at 576. Given the nature of the prison system, it is imperative that officials are able to

identify inmates and maintain consistency; OBSCIS allows them to do so. Having a system that also allows for accurate identification of prisoner financial transactions furthers institutional concerns. A complete overhaul of the computer system and administrative record keeping system would inevitably result in additional expenses for an institution already facing limited resources. *See Ephraim*, 313 F. Supp. 2d at 577. It would also be unduly burdensome for the institution, *id.*, and could create lapses in security with regard to cross-referencing other databases.

In my view, Defendant has rebutted plaintiff's assertions concerning the denial of due process. Nothing more is constitutionally required, and defendant is entitled to summary judgment.[11] A separate Order shall be entered in accordance with this Memorandum.


Dated:  June 18, 2014               /s/
                                    Ellen Lipton Hollander
                                    United States District Judge

---

[11] In light of this determination, this Court need not reach defendant's qualified immunity defense.